IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA R. REMBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-431-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Rita R. Rembert requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 3, 1954, and was fifty-nine years old at the time of the most recent administrative hearing (Tr. 30, 136, 143). She has a high school education, one year of college, vocational training in cosmetology, and has worked as a telemarketer (Tr. 186, 656). The claimant initially alleged inability to work since May 23, 2004, but her onset date was amended at the most recent administrative hearing to October 9, 2009 (Tr. 638-39). The claimant contends she is unable to work due to a broken collar bone, broken right elbow, lung injury, bilateral hand rash, and bilateral knee problems (Tr. 182).

## Procedural History

On October 21, 2009, the claimant applied for disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 28, 2011 (Tr. 9-20). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-12-363-RAW-KEW and remanded the case for further proceedings on September 24, 2013 (Tr. 708-717). On remand, ALJ Luke Liter conducted a second administrative hearing and determined that the claimant was not disabled in a written

opinion dated May 30, 2014 (Tr. 589-605).  The Appeals Council again denied review, so ALJ Liter's opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull ten pounds occasionally and less than ten pounds frequently, sit for six hours out of an eight-hour day, and stand/walk a combined total of two hours out of an eight-hour day (Tr. 598). The ALJ further found the claimant could perform simple and some complex tasks (defined as semi-skilled work with a specific vocational preparation of 3-4), could relate to the public about routine work matters (defined as being able to interact with the public on similar repetitive situations such as a cashier interacting with the public), and had no limits on relating to supervisors and coworkers (Tr. 598).  The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a telemarketer (Tr. 604-05).

## Review

The claimant contends that the ALJ erred by:  (i) failing to find her hearing impairment and low back pain were severe impairments, and (ii) failing to order an additional consultative examination.  The Court finds these contentions unpersuasive.

The relevant medical records reveal that the claimant was involved in a motor vehicle accident in May 2004 and fractured her left clavicle and scapula, right proximal ulna (which was repaired with a rod placement), and a right rib (Tr. 243, 269).  The

claimant followed up with Morton Comprehensive Health Services on June 15, 2004, and was prescribed pain medications (Tr. 466). Thereafter, the claimant regularly received medication management for pain associated with injuries from the motor vehicle accident from her various providers (Tr. 411-20, 423, 427-65, 483-99, 555-59, 812-32).

Dr. S.J. Worrall performed a consultative otological examination on July 20, 2006 (Tr. 272). Dr. Worrall found the claimant had a 58.1% hearing loss in her right ear, a 65.6% hearing loss in her left ear, and that her binaural hearing impairment was 59.4% (Tr. 272). Additionally, he found the claimant's speech reception thresholds were 40 decibels bilaterally, and her word discrimination scores were 72% in her right ear and 68% in her left ear (Tr. 272). Dr. Worrall concluded the claimant had moderate to profound sloping sensorineural hearing loss bilaterally with tinnitus and recommended that the claimant obtain new hearing aids (Tr. 272).

On March 10, 2010, Dr. Traci Carney performed a consultative physical examination of the claimant (Tr. 471-78). The claimant reported, *inter alia*, a history of hereditary deafness, hearing loss, and ringing in her ears (Tr. 471). Dr. Carney noted the claimant wore a hearing aid in her left ear (Tr. 471). On examination, Dr. Carney found the claimant's speech was 100% intelligible and that she had no hearing deficit to normal conversational voice (Tr. 472).

On December 29, 2010, the claimant presented to the Okmulgee Memorial Hospital for low back pain (Tr. 779-803). A CT scan of her lumbar spine performed that day revealed a mild old anterior compression deformity at T12 and degenerative disc disease, but no acute fractures, dislocations, or sublaxations (Tr. 788). The claimant was

diagnosed with a lumbar spine strain, degenerative disc disease, and distal bulge at L5-S, and received pain medications (Tr. 785-86). The claimant reported intermittent low back pain at her pain medication management appointments in May and June 2011 (Tr. 813-16). On February 1, 2013, the claimant presented to Dr. Jean Bernard for a pain management evaluation and reported, *inter alia,* low back pain (Tr. 849-50). Dr. Bernard initiated a pain management plan for arthritis (Tr. 850). On August 27, 2013, the claimant stated her medications were not effective, and Dr. Bernard made an adjustment (Tr. 839). At subsequent follow up appointments with Dr. Bernard in 2013, the claimant reported her low back pain was basically unchanged, and Dr. Bernard found limited range of motion in her lumbar spine (Tr. 833-38).

      At the most recent administrative hearing, the claimant testified she has had hearing problems for 30 years, and has worn a hearing aid in the past, but that she did not currently wear one because they weren't effective (Tr. 643). The claimant further testified that she is unable to work because of problems with her left shoulder and arm (Tr. 646). She stated she could not lift anything or sit/stand/lie for long, and that her problems were getting worse (Tr. 647). Additionally, she stated a friend has helped her with cleaning, cooking, and grocery shopping since her motor vehicle accident, but that she does clean the bathroom except for the tub (Tr. 650, 652). As to her pain, the claimant testified she had pain in her shoulder, elbow, neck, collarbone, knees, ankles, and back (Tr. 647-48). She testified a "couple of times per year" she cannot stand up or sit down because of low back pain (Tr. 648).

In his written opinion, the ALJ found that the claimant's bilateral knee impairment, right ankle impairment, status post motor vehicle accident left shoulder impairment, right elbow impairment, borderline intellectual functioning, depression, and history of substance abuse were severe impairments, and that her hearing deficit was nonsevere (Tr. 593-94). In determining the claimant's hearing deficit was nonsevere at step two, the ALJ mentioned Dr. Worrall's otological testing, an agency interviewer's observation that the claimant had difficulty hearing, and Dr. Carney's consultative exam, and found there was no significant evidence that she could not discriminate words in a normal speech context, that her hearing impairment diagnosis was remote, that she did not follow prescribed treatment of obtaining a hearing aid, and that she had no follow up care related to hearing loss (Tr. 594). At step four, the ALJ summarized the claimant's hearing testimony and the medical evidence contained in the record, including her Function Report, Disability Report, and a Third Party Function Report submitted by her friend (Tr. 599-603). The ALJ then found the claimant not entirely credible (Tr. 603-04).

The claimant first argues that the ALJ erred at step two by failing to classify her hearing deficit and back pain as severe impairments. A claimant has the burden of proof at step two to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert,* 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v.*

*Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimis* showing of impairment. *Hawkins,* 113 F.3d at 1169, *citing Williams,* 844 F.2d at 751. At step two in this case, the ALJ found that the claimant had several severe impairments and that her hearing impairment was nonsevere, but did not make any findings concerning her back impairments. Assuming *arguendo* that the ALJ did err at step two concerning the claimant's hearing impairment and/or back pain, any such error is harmless because the ALJ found other severe impairments, concluded the claimant could not be denied benefits at step two, and proceeded to next step of the sequential evaluation. *See, e. g. Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless any error [in not finding a specific impairment "severe" at step two] here became harmless when the ALJ reached the proper conclusion that Ms. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley,* 373 F.3d at 1123-24 and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."). Furthermore, the claimant raises no other issues in her opening brief regarding her hearing or back. The claimant briefly mentions the ALJ's RFC assessment in her reply brief, but the Court declines to consider any RFC related step four argument because it was not raised in the opening brief, and arguably was not raised in the reply brief. *See Montoya v. Apfel,* 211 F.3d 1278, 2000 WL 556582, at *1 n. 3 (10th Cir. May 8, 2000) [unpublished table opinion] (recognizing district court's refusal to consider an issue raised

for the first time in a reply brief and holding the issue waived "because the issue was not before the district court"). Moreover, even if any RFC related argument was not waived for failure to assert it in her opening brief, it was waived by the claimant's failure to develop the argument. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (scattered statements are "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review").

The claimant's final argument is that the ALJ should have obtained a third consultative examination. The ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins,* 113 F.3d at 1166, *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id.* at 1166. In this case, the claimant did not request an additional consultative examination during the proceedings before the ALJ, so the need for an additional consultative examination must be clearly established in the record. *Id.* at 1168. Although the claimant asserts that a direct conflict exists, she does not point out any such conflict in the evidence, rather, she states that Dr. Worrall's findings and her own demeanor at the administrative hearing establish that her hearing impairment would interfere with her past work. Furthermore, no conflicts are borne out by the record. Both physical consultative

examinations revealed impaired hearing, but neither found the claimant incapable of hearing conversation level speech (Tr. 272, 472). Notably, there were few instances overall where the claimant asked that a question be repeated or clarified during the administrative hearing, despite the fact that she was not wearing a hearing aid that day (Tr. 643, 646-51, 653). Because the claimant did not request an additional consultative exam and because the record does not clearly establish the need for one, the ALJ did not err in failing to obtain a third consultative examination.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine the severity of her hearing impairment differently from the Commissioner, which the Court simply cannot do. *See Casias,* 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**